UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **AMBER MAREE CANTER,** | * | |
| **Plaintiff** | * | |
| v | * | Civil Action No. GJH-20-1894 |
| **WARDEN RONALD WEBER,** | * | |
| **CORY WALKER,** | | |
| **CASE MANAGER DAVIS,** | * | |
| **LT. JAMES SMITH,** | | |
| **MADALINE GORDON,** | * | |
| **CO HEDRICK,** | | |
| **CO JOHNSON, and** | * | |
| **JAMAL SIMMS,** | | |
| | * | |
| **Defendants** | | |
| | *** | |

## MEMORANDUM OPINION

In response to the above-captioned civil rights complaint, Defendants Warden Ronald Weber, Cory Walker, Case Manager Davis, Lieutenant James Smith, Madaline Gordon, Officer Hedrick, and Officer Johnson filed a Motion to Dismiss, or in the alternative, for Summary Judgment. ECF No. 23. Self-represented Plaintiff Amber Maree Canter has opposed the motion. ECF 27. No hearing is necessary to address the matters pending. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, Defendants' motion shall be granted in part and denied in part and the Complaint shall be dismissed as to Defendant Jamal Simms.

### BACKGROUND

**A.     Complaint**

The Complaint concerns an alleged failure to protect Plaintiff from the violence of another

inmate. Plaintiff, who is a transgender woman[1] incarcerated at Western Correctional Institution ("WCI"), states that she suffers from "gender dysphoria" and that this fact is well known by staff at WCI. Despite that knowledge, Plaintiff was forced to go into a cell occupied by an inmate who had been convicted of first-degree rape and other violent sex offenses for which he is serving multiple life sentences. ECF No. 1 at 3. Plaintiff states that "she has the developing parts of a female (*i.e.*, breast[s])." *Id*.

On April 27, 2020, Plaintiff was released from disciplinary segregation and, according to her account, the plan was to place her in administrative segregation for her own protection. ECF No. 1 at 10. Plaintiff recalls Officer V. Lark escorted her to the Housing Unit ("HU") 4 property room to locate her personal property. Once there, Plaintiff reminded both Lark and Officer Hedrick that it was difficult to house her safely because of her transgender status and because she has breasts. *Id*. At this point Plaintiff recalls the officers advising her that they had already picked out a cellmate for Plaintiff, Jamal Simms. *Id*. When Plaintiff asked to see a picture of Simms, Hedrick pulled up a photo of Simms on the inmate data base. *Id*. Plaintiff states that, in addition to Simms's picture, she also saw his convictions for rape and other sex offenses. *Id*. After seeing the information, Plaintiff told Officer Hedrick that she would not feel safe going into the cell with Simms because of the nature of his offenses. *Id*. Hedrick told Plaintiff that if she did not accept the cell assignment with Simms, she would be put in a "contingency cell" and she would receive an infraction. *Id*.

Plaintiff recalls that Hedrick called Lt. Smith and told him about Plaintiff's concerns regarding Simms as a cellmate. ECF No. 1 at 10. Plaintiff states that Smith repeated the same ultimatum provided by Hedrick: accept the cell assignment with Simms or be placed in a

---

[1] The Court adopts female pronouns to refer to Plaintiff in light of her transgender status.

contingency cell. *Id*. at 10-11. Given the choices provided, Plaintiff accepted the cell assignment "against [her] will." *Id* at 11. When Plaintiff arrived at the cell occupied by Simms, she states that Simms was standing in the cell completely nude. *Id*. At this time, Officer Lark expressed concern over putting Plaintiff in the cell with Simms, stating "we can't put Canter in the cell with him." *Id*. Hedrick simply responded that they could put Plaintiff in the cell with Simms. *Id*.

Plaintiff states that during the time she shared a cell with Simms, from April 27, 2020 to May 20, 2020, Simms made multiple sexual advances on Plaintiff. ECF No. 1 at 11. When Plaintiff reported Simms's behavior to Defendants, nothing was done. *Id*. On May 20, 2020, Plaintiff awoke at 6:00 a.m., noticed her shorts were down, and felt Simms rubbing her "right butt cheek with his left hand" then moving up to Plaintiff's breast while Simms was masturbating. *Id*. Plaintiff asked Simms to stop, and Simms complied. *Id*. Simms asked Plaintiff not to report him and out of fear, Plaintiff promised she would not report him. *Id*. At 8:00 a.m. on the same morning, Plaintiff encountered Officer Howard Johnson while he was conducting count and told him that she had been sexually assaulted. *Id*. at 12. Johnson refused to report it. *Id*. Meanwhile, Simms began vomiting and Lt. Smith took Simms to medical. *Id*. Plaintiff remained in the cell. *Id*.

At 4:30 p.m. on the date of the incident with Simms, Plaintiff gave a letter to Mrs. Johnson[2] concerning the assault. ECF No. 1 at 12. Johnson "followed PREA[3] standard[s] and reported it." *Id*. As a result of the report, Officer Wilburn took Plaintiff out of her cell and escorted her to the property room. *Id*. Once there, Plaintiff was seen by medical staff, but she was not allowed to write a statement regarding the incident, no pictures were taken, and the Internal Investigations Division (IID) was not notified. *Id*. Plaintiff then wrote to PREA Coordinator Madaline Gordon, Warden Weber, Lt. Smith, and Case Management Manager Cory Walker stating that she wanted

---

[2] Plaintiff does not explain who "Mrs. Johnson" is or what her job duties entail.
[3] Prison Rape Elimination Act. *See* 34 U.S.C. § 30301, *et seq*.

3

to pursue criminal charges against Simms for the sexual assault. *Id*. According to Plaintiff, each recipient of the letter indicated that there was "no need" to pursue charges. *Id*.

On March 25, 2020, at 8:00 a.m., Plaintiff states, she gave Officer Johnson "all [her] documents and ARPs, statements, cop[ies] of request/letters to all Defendants" and Officer Johnson threw the documents in the trash. ECF No. 1 at 12-13. It is Plaintiff's belief that this action was taken in an effort to deter her from pursuing a claim for failure to protect. *Id*. at 13. Plaintiff bases this belief on the fact that she "told Defendants [she] was filing [a] civil action," giving them motive to cover-up "this crime." *Id*. She notes that she still has not received the documents to present with the complaint in this case. *Id*. Plaintiff alleges that Defendants have engaged in "several retaliatory actions" since the assault occurred. ECF No. 1 at 13. She states she has not been allowed to speak to IID so that she can press criminal charges against Simms; "they have made it extremely hard to exhaust administrative remedy procedures;" they keep putting her into cells with inmates with whom she is not compatible; and they tamper with her outgoing mail. *Id*.

Plaintiff seeks as relief a permanent injunction prohibiting Defendants from: ignoring PREA standards; retaliating against her; and interfering with her efforts to press criminal charges against Simms. ECF No. 1 at 14 and 16. Additionally, Plaintiff seeks an injunction requiring the implementation of stricter guidelines for determining who is a suitable cell mate for her; to produce all documents that were stolen; and to allow her to file ARPs "on issues." *Id*. at 16. Plaintiff also seeks a declaratory judgment stating that Defendants' refusal to ensure Plaintiff's safety is a violation of her constitutional rights and she seeks monetary damages. *Id*. at 15.

**B.    Defendants' Response**

David Hedrick, Correctional Officer II provides a declaration in which he indicates that he

has "no involvement or influence whatsoever" in Plaintiff's cell assignment. ECF No. 23-3 at 1, ¶ 4. Hedrick adds that he has no knowledge of Simms's alleged assault on Plaintiff and that he has not discriminated against Plaintiff "on any illegal basis." *Id*. at 1-2, ¶¶ 5, 6.

Similarly, Officer Howard Johnson provides a declaration stating that he has no recollection of Plaintiff giving him her legal papers or any other documents on or about May 25, 2020. ECF No. 23-4 at 1, ¶ 3. Johnson claims that it his practice to "relay any documents given to me by inmates to the Litigation Coordinator for WCI." *Id*. at ¶ 4. Johnson also states he has not discriminated against Plaintiff "on any illegal basis."[4] *Id*. at 2, ¶ 6. Johnson also claims to have no knowledge that Plaintiff was sexually assaulted by Simms. *Id*. at 1, ¶ 5.

In response to this Court's Order to Show Cause why injunctive relief should not be granted in favor of Plaintiff, Defendants submitted a declaration from Correctional Case Management Supervisor Michael Yates. ECF No. 6-1. Yates explains that on May 4, 2020, Plaintiff and Simms were assigned to the same cell as they were not listed as verified enemies. *Id*. at 1, ¶ 4. Additionally, Yates explains that Simms's PREA intake screening form "indicates that he's neither a risk of victimization or a risk of abusiveness; and, therefore could be housed with the Plaintiff." *Id*.

Yates recalls that on April 22, 2020, Plaintiff's mother called WCI to report that "Plaintiff had been assaulted by [her] cell partner Taylan Jones." *Id*. at 1-2, ¶ 5. As a result of that phone call, Jones was moved to another housing location. *Id*. Jones and Plaintiff subsequently "signed enemy retraction statements; and, by the request of both inmates, have been housed together in cell 5-C-10 since July 1, 2020 without incident." *Id*. at ¶ 6, *see also* ECF No. 6-2 at 3 (Plaintiff's

---

[4] The statements in Hedrick and Johnson's declarations that they have not discriminated against Plaintiff on any illegal basis are not statements made on personal knowledge as required by Fed. R. Civ. P. 56(c)(4). Rather, they are legal conclusions without any reliance on any stated factual information.

5

letter to counsel for the Maryland Attorney General's Correctional Litigation Unit).

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

The purpose of Rule 12(b)(6) "'is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and "draw all reasonable inferences in favor of the plaintiff," *id.* (quoting *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendants' Motion is styled as a Motion to Dismiss or, in the Alternative, Motion for

Summary Judgment.  If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d).  When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*.  When the moving party styles its motion as a "Motion to Dismiss or, in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment.  *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).  Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery.  *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c)(1)(A), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).  If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial.  *See Celotex*, 477 U.S. at 322–23.  A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir.

2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 248.  However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

While the Court may rule on a motion for summary judgment prior to commencement of discovery, *see, e.g.*, *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 286 (2d Cir. 2000), Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be denied when the nonmovant 'has not had the opportunity to discover information that is essential to his opposition[,]'" *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (quoting *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)).  "To obtain Rule 56(d) relief, the non-moving party bears the burden of showing how discovery could possibly create a genuine issue of material fact sufficient to survive summary judgment or otherwise affect the court's analysis." *Neal v. Luedtke*, 713 F. App'x 177, 181 (4th Cir. 2017) (citing *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015)).

Finally, where, as here, the plaintiff is proceeding *pro se*, the Court reads the pleadings generously.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (finding a *pro se* complaint should be "liberally construed" and that, "'however inartfully pleaded,'" the complaint "must be held to 'less stringent standards than formal pleadings drafted by lawyers'" (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).  At the same time, the Court must also fulfill its "affirmative obligation . . . to prevent factually unsupported claims

and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## DISCUSSION

A. **Claim against Jamal Simms**

Plaintiff names her assailant as a Defendant in this action and suggests in her Opposition that Simms's lack of a response to the Complaint means default judgment should be entered against him.[5] ECF 27-1 at 15, n.3. Simms is not a State employee, nor was he acting as an agent of the State when he committed the assault against Plaintiff. At its core, a civil rights action under 42 U.S.C. § 1983 is directed to unlawful conduct under color of law. *See Owens v. Baltimore State's Attorney Office*, 767 F.3d 379, 402 (4th Cir. 2014). A private actor does not act under color of law. The Complaint against Simms is therefore dismissed.

B. **Supervisory Liability**

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had

---

[5] Simms was not served with the Complaint and was therefore not obliged to respond.

actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Defendants Warden Weber, Officer Cory Walker, Case Manager Davis, Lt. James Smith, and Madaline Gordon assert that Plaintiff has failed to raise any specific allegations against them. ECF No. 23-1 at 7. They assert that Plaintiff has named them as Defendants in this case "under a theory of supervisory liability or for deliberate indifference" and conclude they are entitled to dismissal or summary judgment in their favor. *Id*. Plaintiff correctly observes that Defendants Smith, Weber, Gordon, and Davis have not submitted declarations in support of the dispositive motion, nor have they contested the allegations against them. ECF No. 27-1 at 7. However, their failure to respond does not relieve Plaintiff of the obligation to state a viable claim against each of them.

Here, Plaintiff alleges she wrote to Gordon, Weber, Smith, and Walker[6] stating she wished to pursue criminal charges against Simms for the sexual assault but they each responded that there was "no need" to pursue charges. ECF No. 1 at 12. Their failure to indorse Plaintiff's desires to file criminal charges against Simms does not amount to a violation of Plaintiff's constitutional rights. Plaintiff does not have a legally cognizable right to insist on the criminal prosecution of another. "[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614,

---

[6] Plaintiff also raises a claim against Smith for failing to reconsider the decision to assign her to a cell with Simms despite her statements that she would not be safe. That claim is addressed below.

619 (1973), *see also Banks v. Buchanan*, 336 Fed. App'x 122, 123 (3d Cir. 2009); *Sargeant v. Dixon*, 130 F.3d 1067, 1069 (D.C. Cir. 1997); *Sibley v. Obama*, 866 F. Supp. 2d 17, 22 (D.D.C. 2012) *aff'd*, Civ. No. 12-5198, 2012 WL 6603088 (D.C. Cir. Dec. 6, 2012); *Speight v. Meehan*, Civ. No. 08-3235, 2008 WL 5188784, at *3 (E.D. Pa. Dec. 9, 2008). This claim against Gordon, Weber, Smith, and Walker is therefore dismissed.

**C.     Exhaustion of Administrative Remedies**

Defendants assert the Complaint must be dismissed because Plaintiff failed to exhaust administrative remedies. ECF No. 23-1 at 10-13. They rely on the fact that not enough time elapsed between the date Plaintiff filed her second ARP and the date she filed this Complaint for the process to be exhausted. *Id.* at 13.

If Plaintiff's claims have not been properly presented through the administrative remedy procedure they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253

(4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 578 U.S. at 639 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id*. at 635. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id*. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 636. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008).

The Supreme Court stated in *Ross* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 578 U.S. at 642 (quoting *Booth*, 532 U.S. at 738). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30. As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle,* 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging

unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Plaintiff maintains she filed an ARP about the sexual assault, but she has been placed on restriction for the number of ARP complaints she can file each month. ECF No. 27-1 at 16. Her ARP was "dismissed for procedural reasons" because she had "exceeded the limit of requests allowed per Commissioner." *Id.* Plaintiff's ARP submitted with the Complaint was dismissed without addressing the substance of the complaint. ECF No. 1-2 at 5-6. Plaintiff made clear in her Complaint that her attempt to exhaust administrative remedies was thwarted by this limitation, yet Defendants fail to refute that assertion. The Court finds that any failure by Plaintiff to pursue all levels of administrative process was occasioned by Defendants' consistent dismissal of her ARPs pursuant to an unspecified limitation on her use of the procedure.

**D.     Eighth Amendment Claim**

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 832). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id.* "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor*, 817 F.3d at 128.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id*. at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128. However, actual knowledge of a substantial risk does not alone impose liability. Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844.

Defendants rely on an assessment of Simms as "neither a risk of victimization or a risk of abusiveness" pursuant to a PREA screening form as a basis for the assertion that they did not have any objective knowledge that Simms was a threat to Plaintiff's safety. *See* ECF No. 6-1 at 1, ¶ 4. Additionally, they note that prior to Plaintiff's assignment to the cell with Simms, she complained that her former cellmate, Taylan Jones, had assaulted her but later requested to be assigned to the

same cell with Jones after each of them retracted enemy declarations against each other. *Id*. at 1-2, ¶¶ 5, 6. At the time of Plaintiff's cell assignment with Simms, she could not be placed in the same cell with Jones.

Plaintiff's claim primarily relies on her statements to Officer Hedrick, and to Lt. Smith through Hedrick, that she did not feel safe sharing a cell with Simms. She further asserts that another correctional officer, Officer Lark, who accompanied Hedrick during her escort to the cell, voiced concern about placing Plaintiff in the cell with Simms after discovering Simms standing in the cell nude, but Hedrick ignored the concern. . ECF No. 1 at 11, ¶ 33. This allegation regarding Officer Lark's warning has not been addressed by Defendants.

Additionally, Defendants do not address the claim against Lt. Smith, who allegedly denied Plaintiff's request to be assigned to a different cell after learning of Plaintiff's concerns regarding Simms. Rather, Defendants simply assert that Hedrick did not have the authority to change Plaintiff's housing assignment. Lastly, Plaintiff claims Hedrick called the traffic officer and asked for Plaintiff to be placed in the cell with Simms at the request of Lt. Smith. ECF No. 27-1 at 15. This allegation remains unaddressed by Lt. Smith and is only generally denied by Hedrick's claim he had "no knowledge" of Plaintiff's sexual assault.

Plaintiff maintains that Defendants' Motion to Dismiss or for Summary Judgment is premature and should be denied. ECF No. 27-1 at 10. Plaintiff seeks discovery pursuant to Rule 56(d) to obtain "any medical records or videos" to establish her claim. *Id*. She also states that discovery is required so that she can "verify or disprove the representations contained in the affidavits that were provided by the Defendants." *Id*. While Plaintiff asserts that Defendants have custody of her medical records, those records are maintained by the contractual medical care provider and are available to Plaintiff without resort to discovery. Nevertheless, there exists

genuine disputes of material fact in connection with Plaintiff's Eighth Amendment claim that make summary judgment inappropriate at this time. Summary judgment is therefore denied as to Lt. Smith and Officer Hedrick.

### E.     Retaliation

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone." *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (*judgment vacated on other grounds*, 525 U.S. 802 (1998) (conclusory allegations of retaliation insufficient to state claim). "A plaintiff alleging that government officials retaliated against her in violation of her constitutional rights must demonstrate, inter alia, that she suffered some adversity in response to her exercise of protected rights." *ACLU of Md., Inc. v. Wicomico Cty, Md.*, 999 F.2d 780, 785 (4th Cir. 1993).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*Id*.

Plaintiff's retaliation claim fails. While Plaintiff alleges that her legal documents were thrown away, she has not demonstrated adversity, nor is there any apparent nexus between Plaintiff's exercise of her rights and the challenged action. The claim amounts to a bald assertion and must be dismissed.

**F.      Qualified Immunity**

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "In particular, . . . qualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). The defense provides protection for public officials for mistakes of law, mistakes of fact, or a combination of the two. *See Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting). Qualified immunity is a defense from suit, not simply liability, which is lost if a matter is improperly permitted to go to trial. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Resolution of whether an official is entitled to qualified immunity must be determined "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In order to determine if a public official is entitled to the protections afforded by qualified immunity, two inquiries must be addressed by this Court. Although the Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194 (2001) directed a rigid approach to the inquiries involved, the requirement that the two-prong analysis must be "considered in proper sequence" has since been revised. *Katz*, 533 U.S. at 200. Courts are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 818.

The first prong is whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right[.]"

18

*Saucier*, 533 U.S. at 201. If the evidence establishes a violation of a constitutional right, the second prong is to assess whether the right was "clearly established" at the time of the events at issue. *Id*. If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability. The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007) (citing *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003)). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *Dist. of Columbia v. Wesby*, _ U.S. _, 138 S. Ct. 577, 589 (2018) citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

As noted, the Eighth Amendment claim Plaintiff asserts against Defendants Hedrick and Smith survives summary judgment. While a failure to protect claim is well-established, here Defendants relied on objective evidence to determine that Simms did not present a danger to Plaintiff. The PREA worksheet to assess Simms's potential as a threat to other inmates[7] (and his danger of being victimized), indicated he was not a risk. Defendants did not provide this Court with a copy of the worksheet relied upon to determine Simms was not a risk, nor have they otherwise explained the process for selecting Simms as Plaintiff's cellmate. Defendants have not addressed Plaintiff's claim that they were warned about Simms being a danger to her safety and why they took no action in light of those warnings. Rather, they offer glib assertions by Hedrick that he knows nothing of the actual assault. Absent such evidence this Court is not inclined to find that Plaintiff's assignment to the cell with Simms was simply a bad guess in a gray area. In light of the limited facts currently before the Court, Defendants, are therefore not entitled to avail

---

[7] There is no indication whether the PREA worksheet differentiates the risk Simms would pose to transgender inmates like Plaintiff.

themselves of a qualified immunity defense at this time.

## CONCLUSION

For the reasons stated, the Complaint as to Defendants Weber, Walker, Davis, Gordon, Johnson, and Simms is DISMISSED; and summary judgment is DENIED without prejudice as to the claims against Defendants Hedrick and Lt. James Smith. A separate Order follows.

May 12, 2022  
Date

/s/  
GEORGE J. HAZEL  
United States District Judge